# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:07CV180-C

| | |
|---|---|
| THOMAS RUTHERFOORD, INC. ) ) ) | |
| Plaintiff, ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| ARTHUR L. COLLEY, and ) NIELSON & COMPANY, INC. ) | |
| ) | |
| Defendants. ) ) ) | |

**THIS MATTER** is before the Court on the Defendants' "Motion to Dismiss [portions of Counts I and V of the Amended Complaint]" (document #22) and "Memorandum in Support ..." (document #23), both filed November 26, 2007; and the Plaintiff's "Brief in Opposition ..." (document #24) filed December 10, 2007.

On December 19, 2007, the Defendants filed their "Reply ..." (document #25).

On January 15, 2008, this Motion was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and is now ripe for the Court's consideration.[1]

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendants' Motion to Dismiss be <u>denied</u>, as discussed below.

---

[1] On January 11, 2008, this matter was re-assigned from the Honorable Frank D. Whitney to the Honorable Robert J. Conrad, Jr.

# I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Amended Complaint as true, the Plaintiff, Thomas Rutherfoord, Inc., is a Virginia corporation doing business nationally as an insurance and surety bond broker, including through its office in Charlotte, North Carolina.

Sometime in May 2005, the Plaintiff hired the individual Defendant, Arthur L. Colley, a North Carolina citizen, to work as a sales executive in its Charlotte office. The Plaintiff alleges that at the time it hired Mr. Colley, he had no experience as an insurance or surety bond salesman or broker. In exchange for a compensation package that included a base salary of $130,000, Mr. Colley executed an "Employment Agreement" that included a Virginia choice of law provision.

Section 7 of the Employment Agreement provided that Mr. Colley would preserve the confidentiality of the Plaintiff's confidential and/or proprietary information, as follows:

> <u>Confidential or Proprietary Information</u>. For purposes of this Agreement, the term "confidential or proprietary information" includes all information, documents and/or materials (and copies thereof), however obtained by Employee, which concerns or consists of (1) the identity of, or information about, Employer's past, present or prospective customers, including, but not limited to, customer lists, addresses, telephone numbers, expiration dates, contact information or information regarding the business needs of any past, present or prospective customer, or marketing or pricing strategies applicable to any such customer; and (2) information concerning Employer's business which is not generally known in the insurance and/or financial services industry, including but not limited to, Employer's manner of operation, business plans, procedures, policies, and strategies.
>
> Employee agrees that Employer's confidential or proprietary information is and will remain the exclusive property of Employer, is economically valuable, material, confidential, special and a unique asset of Employer, which substantially affects the successful conduct of the business of Employer and Employer's goodwill.
>
> Employee will not, at any time and in any manner, either directly or indirectly, divulge, make use of or communicate any of Employer's confidential or proprietary information without Employer's express, written consent, except in the normal course of Employee's assigned duties hereunder.

Contemporaneously, Mr. Colley also signed the Plaintiff's "Employee Confidentiality Policy and Access and Confidentiality Agreement," in which he promised (emphasis added):

> If I have access to confidential information, I agree to use this information only as needed to perform my job responsibilities. This includes: only accessing confidential information for which I have a need to know; not sharing, copying, releasing, selling, loaning, reviewing, altering or destroying any confidential information except in the scope of my regular job responsibilities; and not misusing or being careless with confidential information. <u>My obligations under this Agreement will continue after separation from employment with Rutherfoord or when I no longer have access to confidential information</u>.

Relevant to the subject Motion to Dismiss, the Employment Agreement also contained what is characterized under Virginia law as a "non-solicitation clause." Specifically, Section 8 of the Employment Agreement states:

> 8.1. Employee agrees that, upon termination of Employee's employment for any reason or no reason, for a period of two (2) years immediately thereafter, Employee will not, directly or indirectly, either on Employee's own behalf or on behalf of another, have any business communication or contact with any customer of Employer, whether initiated by the Employee or by the customer, if the purpose or effect (in whole or in part) of such communication or contact is to:
>
> interfere or attempt to interfere with the business relationships of Employer;
>
> cause, encourage or induce such customer to replace, lapse, forfeit, cancel or reject any insurance, bond or employee benefits contract issued or procured by or through Employer;
>
> cause, encourage or induce such customer to purchase, accept or require any insurance, bond or employee benefits contract other than one issued or procured by or through Employer; and/or
>
> quote rates, provide any insurance, bond or employee benefits-related advice, counsel or services to any such customer or obligee, or receive from any such customer or obligee any premium, commission or fee related to or arising out of any such service.
>
> 8.2. For purposes of this Agreement, a "customer" shall be defined as (a) any entity (or parent, subsidiary, affiliate or bond obligee thereof) for whom Employer has provided any insurance, bond or employee benefits contract, advice or related services at any time within the two (2) year period immediately preceding the termination of Employee's employment with Employer; and/or (b) any entity (or parent, subsidiary or affiliate thereof) whom Employer

solicited or contacted at any time within the two (2) year period immediately preceding the termination of Employee's employment with Employer in order to encourage such entity to purchase, accept or require any insurance, bond or employee benefits contract, advice or related services from Employer.

The Plaintiff alleges that it has made a very significant investment in obtaining and compiling a substantial body of confidential information and trade secrets that is critical to its ability to serve existing and prospective clients and to compete for their business, including: (a) the Plaintiff's clients' identities, including the identity of the key decision maker for each client, policy terms and conditions, premiums, rates, policy expiration dates, risk characteristics, financial information, coverage preferences and service expectations, and (b) markets willing and available to insure the particular risks posed by the Plaintiff's clients.

The Plaintiff further alleges that throughout the term of his employment, Mr. Colley had access to this confidential information.

On April 9, 2007, a Monday, Mr. Colley resigned from his employment with the Plaintiff, and allegedly made statements that he did not intend to be bound by the non-solicitation provision in the Employment Agreement. The next day, April 10, 2007, Mr. Colley became employed by Defendant Nielson & Company, Inc., a Florida corporation doing business, among other places, in North Carolina. The Plaintiff alleges, and for these purposes the Defendants do not deny, that the corporate Defendant is one of the Plaintiff's direct competitors; that Mr. Colley is performing the same work for Defendant Nielson that he formerly performed for the Plaintiff; and that within one week of Mr. Colley's resignation from the Plaintiff and hiring by Defendant Nielson, four of the Plaintiff's existing clients for whom Mr. Colley had been the primary contact transferred their accounts to Defendant Nielson.

The Plaintiff contends that after Mr. Colley resigned, it discovered that on Thursday April 5, 2007, when many employees were out of the office at a sales meeting, Mr. Colley had copied several hundreds of pages of documents, conduct in which Mr. Colley did not engage in the ordinary course of his business for the Plaintiff.

Mr. Colley used a "Blackberry" device for the Plaintiff's business and maintained some of the Plaintiff's confidential information on it. On April 13, 2007, the Plaintiff requested that Mr. Colley not delete or alter any information contained on the Blackberry, but that he allow the Plaintiff to review the Blackberry to ensure that any of its confidential information was removed and had not been improperly copied or transmitted. Mr. Colley refused this initial request. When the Blackberry was returned later by Mr. Colley's counsel, the Plaintiff conducted a forensic examination, which revealed that there was no "recoverable data" on the device.

On April 25, 2007, the Plaintiff filed its initial Complaint against the individual Defendant, stating claims for breach of contract, conversion, violation of North Carolina's Trade Secrets Protection Act, breach of fiduciary duty and duty of loyalty, tortious interference with existing or prospective contract, and unfair and deceptive trade practices.

On May 9, 2007, Mr. Colley's counsel delivered 4,291 pages of documents to the Plaintiff's counsel, all of which, the Plaintiff alleges, were confidential and proprietary documents that Mr. Colley had taken with him in violation of the parties' Agreements. These documents included files concerning the four customers that had moved their business to the corporate Defendant, other original customer files, and financial information regarding the Plaintiff's current and prospective customers.

The Plaintiff further alleges that sometime in June 2007, one of the corporate Defendant's "executive[s]" contacted one of the Plaintiff's executives and during the conversation referred to

certain of the documents that Mr. Colley had improperly taken with him, indicating that Mr. Colley had, in fact, shared the Plaintiff's confidential information with Defendant Nielson.

On October 23, 2007, and with leave of Court, the Plaintiff filed its First Amended Complaint, naming Nielson & Company, Inc. as a Defendant; pleading additional facts, including those discussed above that occurred subsequent to the filing of the initial Complaint; and asserting its conversion, trade secrets, tortious interference, and unfair and deceptive trade practices claims, as well as a new claim against both Defendants for tortious interference with prospective advantage.

The Plaintiff alleges that the corporate Defendant has made a practice of hiring salespersons who have non-competition and/or non-solicitation agreements with their former employers, contending that Nielson's website contains the following statement: "for experienced producers with books of business, we will provide funding in the buyout of non-compete agreements."

On November 26, 2007, the Defendants filed their Motion to Dismiss the Plaintiff's breach of contract (Count I) and tortious interference with contract (Count V) claims to the extent that those claims are based on the non-solicitation provision stated in Section 8 of the Employment Agreement, quoted above, contending that the clause is unenforceable as a matter of law.

The Defendants' Motion has been briefed as set forth above and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th

Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

In Virginia, non-competition agreements must be scrutinized closely, and where ambiguous, must be construed against the former employer. See, e.g., Grant v. Carotek, Inc., 737 F.2d 410, 411 (4th Cir. 1984) ("Virginia law does not look favorably upon restraints of trade," including non-competition agreements); Omniplex World Services v. U.S. Investigations Servs., Inc., 270 Va. 246, 249, 618 S.E. 2d 340, 342 (2005) (non-competition agreement enforceable if contract is narrowly drawn to protect employer's legitimate business interest, is not unduly burdensome on employee's ability to earn a living, and is not against public policy); and Modern Environments, Inc. v. Stinnett,

7

263 Va. 491, 493, 561 S.E. 2d 694, 695 (2002).

As the Defendants point out in their briefs, in Virginia, the validity of a non-competition clause depends upon three factors: function (that is, what activity is prohibited), geographic scope, and duration. Accord Lanmark Technology, Inc. v. Canales, 454 F.Supp.2d 524, 527-30 (E.D. Va. 2006) (refusing to enforce provision that prohibited any competition with former employer, even though former employee's present work was substantially different from his work for former employer); Phoenix Renovation Corp. v. Rodriguez, 439 F.Supp. 2d 510, 521-22 (E.D. Va. 2006) (striking provision that prohibited former employee of plumbing company from working in any "household" in 38 states where former employer did business); Simmons v. Miller, 261 Va. 561, 581, 544 S.E. 2d 666, 678 (2001) (striking non-compete provision that restricted activity broader than the former employer's business activity over an unlimited geographic area for three years); and Meissel v. Finley, 198 Va. 577, 583, 95 S.E.2d 186, 191 (1956) (affirming non-competition agreement that prohibited former partner from writing insurance or surety bonds for five years within 50 mile radius).

Virginia courts have recognized, however, the distinction between non-competition agreements – which prohibit any competition with the former employer during the length and scope of the agreement – and non-solicitation agreements – which permit the employee generally to compete with the former employer, and restrict only his ability to solicit the former employer's customers. Accord Paramount Termite Control v. Rector, 238 Va. 171, 176, 380 S.E. 2d 922, 926 (1989) (affirming two-year non-solicitation clause prohibiting former employee from providing extermination services in any county where he had served employer's customers); Foti v. Cook, 220 Va. 800, 804-05, 263 S.E. 2d 430, 433 (1980) (affirming non-solicitation clause prohibiting former

partner from "offer[ing] to perform or perform[ing] services as a certified public accountant ... to any client of the partnership" for a two-year period); Leddy v. Communication Consultants, Inc., 51 Va. Cir. 467, 469 (Va. Beach Cir. Ct. 2000) (non-solicitation covenant is typically narrower in application than non-competition agreement because it does not restrict former employee from working for a competitor, affirming non-solicitation clause that prohibited former employee from soliciting former employer's "clients" for two-year period); and Zuccari, Inc. v. Adams, 42 Va. Cir. 132, 134 (Fairfax Cir. Ct. 1997) ("[Former employer] should be able to protect its client base from ex-employees who may leave its employ but continue in the same line of business," affirming non-solicitation clause that prohibited former employee from soliciting former employer's customers for five-year period).

In the case of a non-solicitation clause, the absence of a geographic limitation will not preclude its enforcement. Accord Foti, 220 Va. at 805, 263 S.E. 2d at 433 (rejecting employee's contention that absence of express geographic limit amounted to an unreasonable world-wide limit); Leddy, 51 Va. Cir. at 470 (same); and Zuccari, Inc., 42 Va. Cir. at 134 (same).

It is well settled that each restrictive covenant "must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the businesses and employees involved." Omniplex, 270 Va. at 249, 618 S.E. 2d at 342. In other words, the determination as to whether a restrictive covenant is valid is "fact specific." Zuccari, 42 Va. Cir. at 134.

Among facts relevant to that analysis, the former employee's "possession of trade secrets and confidential information is an important consideration." Meissel, 198 Va. at 583, 95 S.E.2d at 191 (affirming non-competition agreement that prohibited former partner from writing insurance or surety bonds for five years within 50 mile radius). Accord Paramount Termite Control, 238 Va. at

9

175, 380 S.E. 2d at 925 (former employees' customer contacts and knowledge of employer's method of operation supported non-solicitation clause); and Foti, 220 Va. at 802-03, 263 S.E. 2d at 431 (upholding non-solicitation agreement that was "designed to protect the legitimate business interests of the firm and to prevent use by a withdrawing partner of confidential information to the disadvantage of the partnership").

Accordingly, as the Plaintiff argues, in Virginia, the enforceability of both non-competition and non-solicitation agreements is typically considered following discovery and after the former employer has had an opportunity to submit evidence supporting the agreement. See, e.g, Lanmark Technology, Inc., 454 F.Supp.2d at 527-30 (court considered validity of non-compete agreement at summary judgment stage); Phoenix Renovation Corp., 439 F.Supp. 2d at 521-22 (same); Simmons, 261 Va. at 581, 544 S.E. 2d at 678 (court considered validity of non-compete agreement at trial); Foti, 220 Va. at 805, 263 S.E. 2d at 433 (court considered validity of non-compete agreement at summary judgment stage); and Leddy, 51 Va. Cir. at 470 (same).

Applying these legal principles to the record in this case, the undersigned is unable to conclude at this early point in the proceedings that the subject non-solicitation agreement is unenforceable as a matter of law and, therefore, must respectfully recommend that the Defendants' Motion to Dismiss the Plaintiff's claims arising from that clause be denied.

Although recognizing that discovery may lead to the development of evidence to the contrary, taking the allegations of the First Amended Complaint as true, the Plaintiff has alleged sufficient facts to support the enforcement of the non-solicitation clause. Indeed, the Plaintiff alleges that Mr. Colley had no prior experience in the insurance or surety bond markets and that any expertise, information, or customer contacts he developed in those areas were through his employment by the

Plaintiff. Moreover, the Plaintiff and Mr. Colley agreed that information such as customer lists, prospective customer lists, and financial information about both customers and the insurance and bond markets were the Plaintiff's confidential, proprietary information. Nevertheless, Mr. Colley took a large amount of that confidential information with him when he resigned and went to work for Defendant Nielson, including the customer files of the four customers that switched their business to the corporate Defendant within a week of Mr. Colley changing jobs. And finally, it appears that Mr. Colley is performing the exact same job function for one of the Plaintiff's direct competitors.

In light of these facts, which must be taken as true at this early stage of the proceedings, the non-solicitation agreement which permits Mr. Colley to compete directly with the Plaintiff as long as he refrains for two years from soliciting any of the Plaintiff's customers or any potential customer that the Plaintiff solicited in the two years prior to his resignation, would be enforceable. In other words, enforcement of the clause would be proper because it will not prevent Mr. Colley from working for Defendant Nielson or from selling insurance or surety bonds – as long as he does not do so by soliciting the Plaintiff's customers. Accord Paramount Termite Control, 238 Va. at 176, 380 S.E. 2d at 926 (affirming two-year non-solicitation clause prohibiting former employee from providing extermination services in any county where he had served employer's customers); Foti, 220 Va. at 804-05, 263 S.E. 2d at 433 (affirming non-solicitation clause prohibiting former partner from "offer[ing] to perform or perform[ing] services as a certified public accountant ... to any client of the partnership" for a two-year period); Meissel, 198 Va. at 583, 95 S.E.2d at 191 (recognizing former partner's "possession of trade secrets and confidential information is an important consideration" and affirming non-competition agreement that prohibited him from writing insurance

or surety bonds for five years within 50 mile radius); Leddy, 51 Va. Cir. at 469 (affirming non-solicitation clause that prohibited former employee from soliciting former employer's "clients" for two-year period); and Zuccari, Inc., 42 Va. Cir. at 134 ("[former employer] should be able to protect its client base from ex-employees who may leave its employ but continue in the same line of business," affirming non-solicitation clause that prohibited former employee from soliciting former employer's customers for five-year period).

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendants' "Motion to Dismiss" (document #22) be **DENIED WITHOUT PREJUDICE** to the Defendants' right to renew its Motion at the conclusion of discovery.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins,

766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED AND ORDERED.**

Signed: January 24, 2008

_____

Carl Horn, III
United States Magistrate Judge